**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------------------- x
ING BANK, fsb (d/b/a ING DIRECT), and              :
ING DIRECT BANCORP,                                :
                                                   :
                Plaintiffs,                        :
                                                   :
        v.                                         :      Civil Action No. _____
                                                   :
                                                   :      JURY TRIAL DEMANDED
EVERBANK,                                           :
EVERBANK FINANCIAL CORP., and                      :
STONE & WARD, INC. (d/b/a/ STONE WARD),            :
                                                   :
                Defendants.                        :
---------------------------------------------------------------- x
```

## COMPLAINT

Plaintiffs ING Bank, fsb (d/b/a ING DIRECT) and ING DIRECT Bancorp, by their attorneys, Connolly Bove Lodge & Hutz LLP, for their complaint against defendants EverBank, EverBank Financial Corp., and Stone & Ward, Inc. (d/b/a Stone Ward), allege as follows:

### NATURE OF THE ACTION

1.      This is a civil action for: (i) trademark infringement arising under Section 32(1) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 et seq.; (ii) use of false designations of origin in commerce, arising under Section 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125(a); (iii) false advertisement arising under Section 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125(a); (iv) unfair competition under Section 43(a) if the Lanham Act, as amended, 15 U.S.C. § 1125(a); (v) trademark dilution arising under Section 43(c) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125(c); (vi) the likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name valid at common law under the Delaware Trademark Act, 6 Del. C. § 3313; (vii) statutory unfair

competition under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 et seq.; (viii) common law unfair competition under the common law of the State of Delaware; and (ix) unjust enrichment under the common law of the State of Delaware.

### JURISDICTION AND VENUE

2.    This Court has original jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims arising under the law of the State of Delaware pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

### PARTIES

4.    Plaintiff ING Bank, fsb is an FDIC-insured federally chartered savings bank doing business as ING DIRECT, regulated by the Office of Thrift Supervision, and headquartered at 1 South Orange Street, Wilmington, Delaware 19801.  ING Bank, fsb is the exclusive licensee in the United States of the famous ORANGE BALL DESIGN trademark for banking services, banking services offered over a computer network, savings account services, mortgage banking, home equity loans, and related products and services, as well as a licensee of other ING formative trademarks for similar or related services.

5.    Plaintiff ING DIRECT Bancorp is a Delaware corporation with its principal place of business at 1 South Orange Street, Wilmington, Delaware 19801.  ING DIRECT Bancorp is the owner of the famous ORANGE BALL DESIGN trademark for banking services, banking services offered over a computer network, savings account services, mortgage banking, home equity loans, and related products and services.  For purposes of this Complaint, ING Bank, fsb

and ING DIRECT Bancorp will be referred to collectively and individually as "ING DIRECT" or "Plaintiffs."

6.    Defendant EverBank is, upon information and belief, an FDIC-insured federally chartered savings association headquartered at 8100 Nations Way, Jacksonville, Florida 32256. EverBank delivers products and provides services directly to consumers and through business partners in all 50 states, and consumers make deposits to and withdrawals from their EverBank accounts from all 50 states, including Delaware. EverBank provides banking and mortgage services to consumers nationwide. EverBank also offers products through a variety of business partners throughout the United States. EverBank boasts that it serves 400,000 customers, has $2.9 billion of customer deposits, has originated over $14 billion of annual mortgage production, and services approximately $31 billion in loans. EverBank hosts a transactional (not merely informational) Internet website that enables the citizens of the 50 states, including Delaware, to open, transact, and use a variety of EverBank's banking services and products, including its *FreeNet* Checking Account and the EverOne[sm] Financial Center. In connection with its business, upon information and belief, EverBank transacts business, and enters into contracts to supply services and/or products in Delaware, with Delaware companies and citizens.

7.    Defendant EverBank Financial Corp. is, upon information and belief, a Florida corporation having an address of 8100 Nations Way, Jacksonville, Florida 32256. EverBank Financial Corp. is, upon information and belief, a unitary thrift holding company. EverBank Financial Corp., upon information and belief, owns and is responsible for EverBank, and delivers products and provides services directly to consumers and through business partners in all 50 states, and consumers make deposits to and withdrawals from their EverBank accounts from all 50 states, including Delaware. In connection with its business, upon information and belief,

3

EverBank Financial Corp. transacts business, and enters into contracts to supply services and/or products in Delaware, with Delaware companies and citizens. For purposes of this Complaint, EverBank and EverBank Financial Corp. will be referred to collectively and individually as "EverBank."

8.      Defendant Stone & Ward, Inc. ("Stone Ward") is an Arkansas corporation doing business as Stone Ward. Stone Ward is an advertising agency with its principal place of business at 225 East Markham, 4th Floor, Little Rock, Arkansas, 72201, and offices in Chicago and Boston. Stone Ward creates, provides, and distributes advertisements and marketing materials for companies, including EverBank. Stone Ward provides and distributes advertisements and marketing materials on a national basis, with the knowledge and intent that the advertisements and marketing materials that it creates will be distributed nationally, including in Delaware. Stone Ward has local, regional, and national clients. Stone Ward's national clients include EverBank, Terminix, and Meineke Car Care Centers, companies for which Stone Ward provides and distributes advertising throughout the United States, including, upon information and belief, in Delaware and to media channels that purposefully reach Delaware and residents of Delaware. Stone Ward creates, *inter alia*, advertising for the Internet that is interactive and transactional.

**FACTS**

**ING and the World-Famous ING Name and ORANGE BALL DESIGN Mark**

9.      ING DIRECT's ultimate parent, ING Groep N.V. ("ING Groep"), a global financial services company of Dutch origin and located in the Netherlands, was founded in 1991 by a merger between Nationale-Nederlanden and NMB Postbank Group, meaning that the ING family of companies has more than 150 years of experience in the financial services industry. During the past 16 years, ING Groep and the affiliated ING companies, including ING DIRECT,

4

have become a significant multinational financial group with very diverse international activities. The ING companies provide a wide array of banking, insurance, and asset management services in over 50 countries. The ING companies' 120,000-plus employees work daily to satisfy a broad customer base: individuals, families, small businesses, large corporations, institutions, and governments. Based on market capitalization, the ING companies comprise one of the 20 largest financial institutions worldwide.

10.    ING DIRECT, the Internet banking arm of the ING companies, is one of the world's largest online banks, boasting more than 16 million customers in nine countries. ING DIRECT, in the United States, is the fourth largest savings bank in the country and the largest Internet bank, with more than $65 billion in assets, delivering superior savings and mortgage services to over 4 million customers.

11.    ING DIRECT and/or affiliated ING companies began use of the ING formative marks in the United States in or about 1992. ING DIRECT has been using the name ING DIRECT since in or about 1999, by itself, as well as with other ING formative marks (hereinafter the "ING Name"). The ING Name is known worldwide and is widely recognized by the consuming public as a designation of source.

12.    ING DIRECT began use of its ORANGE BALL DESIGN mark in or about 2000. The ORANGE BALL DESIGN mark soon became known worldwide and is widely recognized by the consuming public as a designation of source.

13.    ING DIRECT's attention to customer care, and its easy-to-use, high-value products and services, are evident in the Orange Savings Account$^{tm}$ and other banking products offered by ING DIRECT to consumers. The use of the ING Name and ORANGE BALL

DESIGN mark identifies programs and marketing and promotional materials as coming from ING DIRECT.

14.    ING DIRECT spends tens of millions of dollars each year in advertising and promoting its products and services using the ING Name and ORANGE BALL DESIGN mark through various media, including television, radio, magazines, Internet, and product displays.

15.    ING DIRECT maintains its Internet website at www.ingdirect.com, through which the ING Name and ORANGE BALL DESIGN mark are further promoted to consumers as well as the banking and finance industries.    ING DIRECT's ultimate parent maintains the website www.ing.com, among others, through which the ING mark is promoted to consumers as well as the banking and finance industries.

16.    Because of its prominence in the Internet banking industry, ING DIRECT is the subject of regular attention and comment by the concerned press and media.    The company has been featured in leading national and international financial publications, such as *Business Week*, *Forbes*, *The American Banker*, and *U.S. News & World Report.*

17.    The extensive advertising and promotion of the ING Name and ORANGE BALL DESIGN mark, combined with the high value products and services offered by ING DIRECT and the company's great commercial success, have resulted in the ING Name and ORANGE BALL DESIGN mark acquiring tremendous goodwill and secondary meaning among the consuming public. The ING Name and ORANGE BALL DESIGN mark are some of the most well-known financial industry marks in the world and the ING Name and ORANGE BALL DESIGN mark are thus famous and highly distinctive.    The ING name was ranked as one of the 100 most valuable brands in the world by Business Week magazine in 2006.

18.     In addition to common law rights in the ING Name and the ORANGE BALL DESIGN mark, Plaintiffs are the owners and/or authorized users of the following United States federal trademark registration:   U.S. Registration No. 3,068,848, for the ORANGE BALL DESIGN mark, for: card services; banking services; banking services offered over a global computer network; mutual fund services; mortgage lending and brokerage services; mortgage banking; mortgage loans, home equity loans; savings account services; securities brokerage services. A copy of the registration is attached at Exhibit A.

### Defendants' Activity Resulting In, *Inter Alia*, Trademark Infringement, Trademark Dilution, and Unfair Competition

19.     EverBank styles itself as an Internet bank.  Through the use of the EverBank and EverBank Direct names, EverBank operates nationally and claims to be a leader in consumer direct banking and lending.  EverBank claims that EverBank Direct has approximately $1.5 billion in banking accounts.  As a comparison, ING DIRECT, the market leader and most recognized name in the field of direct banking, has more than $65 billion in banking account assets.

20.     Upon information and belief, EverBank openly states its goal of competing directly with ING DIRECT, the market leader.

21.     In order to compete with ING DIRECT, EverBank, in conjunction with Stone Ward, embarked on an advertising and promotional campaign that improperly used and traded upon the ING Name and ORANGE BALL DESIGN mark.

22.     In one advertisement, which, upon information and belief, was disseminated worldwide through the Internet, EverBank and Stone Ward used both the ING Name and ORANGE BALL DESIGN mark without authorization from Plaintiffs or any other authorized entity.  Printouts of frames from the animated advertisement are attached hereto as Exhibit B.  A

significant segment of the advertisement prominently utilized ING DIRECT's ORANGE BALL DESIGN mark, and a significant segment of that use also prominently displays the term ING along with the ORANGE BALL DESIGN mark. The express and implied reference to and invocation of the term ING and the ORANGE BALL DESIGN mark was done intentionally and with knowledge of ING DIRECT's ORANGE BALL DESIGN mark. An employee of Stone Ward, Mr. Ross Dobson, admitted that the orange color of the ball in the advertisement was "not accidental," stating that "We wanted to be very relevant to this target audience, the segment of customers that tend to be most attracted to ING. ING is the market leader, the Goliath. They're the giant." *See* article from www.us-banker.com, attached hereto as Exhibit C. The advertisement was created by Stone Ward for EverBank, appearing on, *inter alia*, banner ads and the popular web sites of Yahoo!, *The New York Times*, and *The Wall Street Journal*. Upon information and belief, a version of the advertisement and similar materials were hand-distributed through the use of a self-styled "guerrilla" advertising campaign in several large cities in the United States. Upon information and belief, Stone Ward participated, along with Everbank, in the dissemination of the advertisements and promotional materials. Stone Ward's participation in the advertising and promotional campaign contributed to the deception of the consuming public.

23.   The advertising campaign illustrated by the advertisement depicted in Exhibit B prompted a "huge pickup" in new accounts and online inquiries for EverBank, according to Frank Trotter, representative for EverBank, and President of EverBank Direct, a unit of EverBank. *See* article from www.us-banker.com, attached hereto as Exhibit C. Mr. Trotter further stated: "Many people who saw it told us, 'Sign me up right now.'" *See id.*

8

24.    On Everbank's www.everbank.com website, both the term ING and the ORANGE BALL DESIGN mark were used without authorization from ING DIRECT or any of the ING companies. A web page printout from www.everbank.com is attached hereto as Exhibit D.

25.    Defendants' use of the term ING and the ORANGE BALL DESIGN mark is confusingly similar to the famous ING Name and the ORANGE BALL DESIGN mark. Defandants' use of the ING Name and ORANGE BALL DESIGN mark is phonetically and/or visually identical and convey the same commercial impression, especially because they are used by defendants in advertising and promotional materials in the banking industry, the same industry in which Plaintiffs operate.

26.    Defendants' confusingly similar use of the ING Name and the ORANGE BALL DESIGN mark have been used by Defendants to enable EverBank to compete directly and unfairly with the products and services offered by Plaintiffs under the famous ING Name and ORANGE BALL DESIGN mark. Defendants have used the term ING and the ORANGE BALL DESIGN mark for the same type of financial and banking services offered to the same classes of consumers as the products and target customers for Plaintiffs' products.

27.    Defendants' use of a mark closely and confusingly similar to the ING Name and the ORANGE BALL DESIGN mark as used in connection with financial and banking products and services, is likely to cause confusion as to the source and origin of EverBank's products and services and is likely to cause confusion, or to cause mistake, or to deceive the public and the trade as to the source or sponsorship of EverBank's products and services and to mislead the public into believing that EverBanks's products and services emanate from, are approved or sponsored by, or are in some way associated or connected with Plaintiffs.

28.    Defendants' use of a mark closely and confusingly similar to the ING Name and the ORANGE BALL DESIGN mark in connection with financial and banking products in advertisements such as depicted in Exhibit B, wherein the ORANGE BALL DESIGN mark appears to be replaced by EverBank's similarly spherical logo, falsely conveys that Plaintiffs have become or become affiliated with EverBank or otherwise misrepresents the nature, characteristics, and qualities of EverBank's products, services, and commercial activities. The advertisement, upon information and belief, actually and materially deceived or had the capacity to materially deceive a substantial segment of the audience.

29.    The animated advertisement depicted in Exhibit B further altered the appearance of ING DIRECT's ORANGE BALL DESIGN mark. Initially, the ORANGE BALL DESIGN mark appeared in a manner similar to that depicted in the registration, but Defendants caused the ORANGE BALL DESIGN mark to appear distorted, and appear as if it was being crushed and bounced off the visible screen by EverBank's logo, which then appeared to replace it. This constitutes intentional and malicious tarnishment and disparagement of ING's ORANGE BALL DESIGN mark.

30.    The advertisement depicted in Exhibit B is or was an interactive Internet advertisement which displayed only the term ING and the ORANGE BALL DESIGN mark during one phase of the advertisement. At other phases, the term ING and the ORANGE BALL DESIGN mark were displayed, along with other wording, but these phases did not include EverBank's name or logo. At any point in the advertisement, the advertisement could be activated by clicking on it, and any prospective customer of Plaintiffs would have been directed to EverBank's website seamlessly and unknowingly, and such prospective customer could then initiate EverBank's services via EverBank's website. Prospective customers viewing the

10

advertisement, upon information and belief, were deceived by the advertisement; prospective customers believed they were viewing an ING DIRECT advertisement and by clicking it would go to an ING DIRECT website. The term ING and the ORANGE BALL DESIGN mark were used by Defendants in a manner calculated to capture initial consumer attention, thus the advertisement created or had the capacity to create initial interest confusion.

31.    EverBank, on its website and, upon information and belief, in other media or advertisements, has stated that ING DIRECT does not offer checks.    This is a false and misleading statement.

32.    ING DIRECT, upon learning of the advertisement depicted in Exhibit B, demanded via a letter that EverBank cease and desist from displaying, disseminating, or using the advertisement.    EverBank responded in writing to ING DIRECT's letter, denying infringement, and promising to discontinue use of the advertisement.    Subsequently, upon information and belief, at least certain uses of the advertisement were ceased. Full confirmation of the cessation of the advertisement has not been confirmed, and neither the harm to ING DIRECT nor the unjust gain of Defendants has been addressed.

33.    A GOOGLE search for ING reveals EverBank is listed as a sponsored link.  On information and belief, EverBank submitted ING as a keyword to search engines to attract users to its website.  Prospective customers looking for Plaintiffs are thereby diverted to EverBank's website.

34.    Defendants' infringing activity as described above weakens the unique association which has heretofore existed between the ING Name and the ORANGE BALL DESIGN trademark and ING DIRECT goods and services, thereby lessening the capacity of the Plaintiffs' trademarks to identify and distinguish their goods and services.    Defendants'

unauthorized activity is likely to dilute the distinctive quality of the famous ING Name and ORANGE BALL DESIGN trademark and injures Plaintiffs' reputation as the source of high quality financial and banking products and services.

35. Upon information and belief, Defendants' adoption and use of the infringing ING Name and ORANGE BALL DESIGN trademark was and is willful and represents a deliberate and willful attempt to trade unlawfully upon the goodwill associated with the famous ING Name and ORANGE BALL DESIGN mark.

36. Defendants' activities as described herein cause and have caused Plaintiffs irreparable harm and significant injury.

### COUNT I -- INFRINGEMENT OF REGISTERED TRADEMARK

37. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 36 above as if fully set forth herein.

38. Defendants' activities as described above constitute infringement of ING DIRECT's ORANGE BALL DESIGN trademark in violation of Section 32(1) of the Lanham Act of 1946, as amended (15 U.S.C. §1114(1)).

### COUNT II -- FALSE DESIGNATION OF ORIGIN

39. Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

40. Defendants' activities as described above constitute the use of false designations of origin in commerce, in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

## COUNT III -- FALSE ADVERTISING

41.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

42.    Defendants' activities as described above constitute false advertising in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

## COUNT IV -- UNFAIR COMPETITION

43.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

44.    Defendants' activities as described above constitute unfair competition in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

## COUNT V -- FEDERAL TRADEMARK DILUTION

45.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

46.    The ING Name and ORANGE BALL DESIGN trademark are distinctive and famous, and have enjoyed such distinction and fame since long before the time Defendants commenced use of the term ING and ORANGE BALL DESIGN trademark.

47.    Defendants' activities as described above constitute dilution of the distinctive quality of the famous ING Name and ORANGE BALL DESIGN trademark, in violation of Section 43(c) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(c)).

## COUNT VI --TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION UNDER THE DELAWARE TRADEMARK ACT, 6 DEL. C. § 3313

48.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

49.    The ING Name and ORANGE BALL DESIGN trademark are distinctive and famous, and have enjoyed such distinction and fame since long before the time Defendants commenced use of the ING Name and ORANGE BALL DESIGN trademark.

50.    Defendants' activities as described above constitute injury to Plaintiffs' business reputation and dilution of the distinctive quality of the famous ING Name and ORANGE BALL DESIGN trademark, in violation of the Delaware Trademark Act, 6 Del. C. § 3313.

### COUNT VII -- UNFAIR COMPETITION UNDER THE DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT, 6 DEL. C. § 2531 ET SEQ.

51.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

52.    Defendants' activities as described above constitute unfair competition and deceptive trade practices under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 et seq.

### COUNT VIII -- COMMON LAW UNFAIR COMPETITION

53.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

54.    Defendants' activities as described above constitute unfair competition under the common law of the State of Delaware.

### COUNT IX -- COMMON LAW UNJUST ENRICHMENT

55.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 36 above as if fully set forth herein.

56.    Benefits have been conferred upon Defendants by Defendants' unauthorized use of Plaintiffs' trademarks.

57.    Defendants have appreciated, accepted, and retained these benefits.

58.    It is inequitable for Defendants to retain these benefits without the payment of value to Plaintiffs.

59.    Defendants have been unjustly enriched at the expense of Plaintiffs.

60.    Defendants' activities as described above constitute unjust enrichment under the common law of the State of Delaware.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    That Defendants, their agents, servants, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently from:

(a)    Using the term ING and ORANGE BALL DESIGN trademark or any other mark, term or title confusingly similar to the term ING and ORANGE BALL DESIGN trademark in connection with marketing, sale, offering for sale, advertisement, or promotion of banking or financial products or services;

(b)    Committing any other act calculated or likely to cause the public to believe that defendant EverBank is in any manner connected, affiliated or associated with ING or from otherwise competing unfairly with ING; and

(c)    Making statements that ING DIRECT does not offer checks or checking.

2.    That Defendants, their agents, servants, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, within thirty (30) days of the injunction order:

(a)    Remove ING, or variations thereof, from any metatags in any website owned or controlled by, or on behalf of, Plaintiffs;

(b)    Notify all search engines of the removal of any such metatags and provide proof of same to Plaintiffs; and

(c)    Notify all search engines that the term ING, or variations thereof, shall be removed from any sponsored links paid for by any of the Defendants.

3.    Pursuant to 15 U.S.C. § 1118, that Defendants deliver to Plaintiffs for destruction all material (including, without limitation, all advertisements, promotional materials, and brochures), within its possession, custody or control, either directly or indirectly, that (a) bears the ING Name and ORANGE BALL DESIGN trademark or any other designation confusingly similar to the ING Name and ORANGE BALL DESIGN trademark or (b) states that ING DIRECT does not offer checks or checking.

4.    Pursuant to 15 U.S.C. § 1116(a), that Defendants be directed to file with the Court and serve upon Plaintiffs, within thirty (30) days after entry of the injunctive order, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraphs 1, 2, and 3 above.

5.    Pursuant to 15 U.S.C. § 1117(a) and the common law, that Defendants be directed to account to Plaintiffs for all gains, profits, and advantages derived from Defendants' wrongful acts.

6.    Pursuant to 15 U.S.C. § 1117(a) and 6 Del. C. § 2533(c), that Plaintiffs recover from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action.

7.    Pursuant to 15 U.S.C. § 1117(a) and 6 Del. C. § 2533(b), that the Court determine that the case is exceptional and that Plaintiffs recover from Defendants their attorneys' fees and the costs of this civil action.

8.    That Plaintiffs be awarded such other and further relief as the Court deems equitable, just, and proper.

## DEMAND FOR JURY

Plaintiffs request that all issues triable by a jury be so tried in this case.

_____
Francis DiGiovanni (#3189)
Stanley C. Macel, III (#492)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141

Of Counsel:

Jennifer Fraser
CONNOLLY BOVE LODGE & HUTZ LLP
1990 M Street, N.W., Suite 800
Washington, D.C. 20036
(202) 331-7111

*Attorneys for Plaintiffs*

Dated: March 15, 2007

526751_1

# EXHIBIT A

Int. Cl.: 36

Prior U.S. Cls.: 100, 101, and 102

**Reg. No. 3,068,848**

## United States Patent and Trademark Office

Registered Mar. 14, 2006

### SERVICE MARK
### PRINCIPAL REGISTER



ING USA HOLDING CORPORATION (DELA-WARE CORPORATION)
1 SOUTH ORANGE STREET
WILMINGTON, DE 19801

FOR: CREDIT CARD SERVICES; BANKING SER-VICES; BANKING SERVICES OFFERED OVER A GLOBAL COMPUTER NETWORK; MUTUAL FUND SERVICES; MORTGAGE LENDING AND BROKERAGE SERVICES; MORTGAGE BANKING; MORTGAGE LOANS, HOME EQUITY LOANS; SAV-INGS ACCOUNT SERVICES; SECURITIES BROKERAGE SERVICES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 9-0-2000; IN COMMERCE 9-0-2000.

THE MARK CONSISTS OF AN ORANGE CO-LORED BALL DESIGN. COLOR IS CLAIMED AS A FEATURE OF THE MARK.

SN 76-977,858, FILED 11-8-2000.

JAMES A. RAUEN, EXAMINING ATTORNEY

# EXHIBIT B

**EVERBANK Creative on Yahoo! 2/12/07**



# EXHIBIT C





What makes this one special?

Free Email Bulletin | Subscribe | Renew | Advertising | In The Press

Contact Us | About Us

Search:
[Go]

- Home
- Buyer's Guide
- Back Issues
- Web Bank
- Web Seminars
- CareerZone
- Research Vault

# marking

**March 2007**

**AD Beat: It's a Bird. It's a Plane. Nope, It's EverBank.**

Few bank ads actually pretend to look like the competition. But EverBank's smart new ads are designed to do just that-and then draw consumers back home.

*By* Karen Krebsbach *and* Karen Krebsbach

ADVERTISEMENT



Complimentary eBook
Campaigns-on-Demand



GIFT CARDS?
DEBIT CARDS?
PAYROLL CARDS?
Find out more about the growing prepaid card and stored value market





FINANCIAL IT
SECURITY
Intelligencer

FREE
bi-weekly
eNewsletter

What's the best way to beat the competition? If you're EverBank Financial Corp., the answer is to cloak yourself in camouflage that resembles the competition. Seems like an insane approach in a cutthroat industry, but it spelled genius for this Jacksonville, FL, bank, which boasts $3.7 billion in assets and only four branches.

The bank's new ad campaign, which officials call "preemptive," touts its Internet-only savings rate of 6.1 percent for the first three months, takes on Web competitor ING Direct head-on. The rate is .01 percent higher than a handful of other online competitors. After the three months, the rate drops to 4.61 percent for more than $100,000; 4.11 for $50,000 to $99,999; 3.60 percent for $25,000 to $49,999; 3.30 percent for $10,000 to $24,999; and 3.25 percent for under $10,000.

In a clever mimicking of the ING Direct ad, which uses a bouncing orange ball, EverBank douses its logo-an infinity sphere-in neon orange and rolls it across the screen; as it rolls, the orange becomes red, the real color of the bank's brand. "What Are You Waiting For?" aims to "counteract industry competition and remind customers of the award-winning features of its FreeNet checking account," which was named "best checking account" by Kiplinger's Personal Finance in November, say officials.

The electric orange color "is not accidental," admits the creative brain behind the ads, Ross Dobson, managing director of strategy enablement at Stone Ward, which has offices in Little Rock, Chicago and Boston. "We wanted to be very relevant to this target audience, the segment of customers that tend to be most attracted to ING. ING is the market leader, the Goliath. They're the giant. But meanwhile, when you look at the marketplace, there is a lot of alternatives. And this is a stronger offering than any brick and mortar banks out there."

Kicking off February 1, the campaign appeared on banner ads and on the Web sites of Yahoo!, bankrate.com, The New York Times and The Wall Street Journal. They were also part of a one-day guerrilla campaign in the financial districts of New York, San Francisco and Chicago, where commuters were handed free transit cards.

The ads don't beat around the bush, as they nudge the undecided toward answering why they haven't switched yet to a higher-interest checking account: "What Are You Waiting For? Great Online Checking is Already Here." And "the Biggest News in Online Checking is Already

MISSED THE WEBINAR?

DATA BREACH PLANNING AND RESPONSE:
ISSUES, INSIGHTS AND ACTIONS



Learn how to prepare your organization.

Click here to replay.



STAR | FIRST DATA

Here." And "FreeNet Checking Account from EverBank. Great Rates. Real Checks." All ads direct consumers to www.whyruwaiting.com, where a more detailed pitch, including a comparison chart against checking accounts at ING, Washington Mutual, Bank of America and Bank of Internet USA. ING is expected to announce an online check-less checking account in the next month, heating up competition in this space even more.

Created by a three-person, Dobson-led Stone Ward team, the campaign was hammered out in a couple of days, Dobson says. "The bank wanted to move quickly and get to market," he says, noting that the bank's decision to only use new media was a choice made for "relevance and cost effectiveness."

With mainstream banks like HSBC and Citigroup jumping in the fray of high interest-bearing checking accounts, where "people park a lot of money," EverBank had to act quickly, says Frank Trotter, president of EverBank Direct, the online unit.

Trotter says the bank, which was founded in January 2000, has been weighing a new ad campaign since last fall. "'Why are you waiting?' became a huge question in the focus groups," he says. "You don't need to be banking with a traditional bank. This gives us a good opportunity to launch that message for traditional and online customers."

Sure, ING is the juggernaut in this space, "but we still think we had a better checking account and we wanted to point that out to customers," Trotter says. "Our logo is the infinity sphere. Infinity is forever. We're the only bank you'll ever need."

In its street campaign, marketers distributed 7,500 transit cards at rush hour. The teams wore sweatshirts with campaign slogans, held picket signs with the messages, and distributed transit passes in fold-over collateral cards that carried that same phrases. The teams began distribution at 6:01am to coincide with EverBank's introductory yield of 6.01 percent. So far, the campaign has prompted "a huge pickup" in new accounts and online inquiries, Trotter says, but he declined to provide figures. "Many people who saw it told us, "Sign me up right now,'" he says.

The simplicity of the campaign hit home. "We'd all like to get into the excruciating detail of why we're bigger, better, faster, but we also knew we had to clearly communicate those things in a simple message," says Trotter. "This did it." He points out that the account also offers printed checks as an option, not something provided by ING Direct. (c) 2007 U.S. Banker and SourceMedia, Inc. All Rights Reserved. http://www.us-banker.com http://www.sourcemedia.com

Return to Top | Home

---

**Banking MarketPlace**

**Security Within – Configuration based Security**
Configuration based security is a pro-active way to defend against attacks. Click for whitepapers.

**Make it happen.**
With 0%† Introductory APR HSBC MasterCard® with Cash or Fly Rewards.

**Vista Upgrade Planning**
Is Vista in your future? Click to demo our Vista Upgrade Reports.

**Treasury Strategies, Inc.**
Consulting partners to financial institutions and solution providers serving the corporate, institutional and small business markets.

**Financial Services Phone Solution**
Vocalocity PBX cuts costs with more phone features for less money.

*Buy a link Now*



Advertising | Subscribe | Contact Us | Privacy Policy | Site Map

© 2007 U.S. Banker and SourceMedia, Inc. All rights reserved. SourceMedia is an Investcorp company.
Reprints/Web Permissions. Use, duplication, or sale of this service, or data contained herein, is strictly prohibited.

# EXHIBIT D

**Landing Page**

http://www.everbank.com/direct.asp?idpage=pro_evr_fn_eo&referid=12351



# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ING BANK, fsb (d/b/a ING DIRECT), and ING DIRECT BANCORP, | EVERBANK, EVERBANK FINANCIAL CORP., and STONE & WARD, INC. (d/b/a/ STONE WARD), |

**(b)** County Of Residence of First Listed Plaintiff    **New Castle County, Delaware**
(EXCEPT IN U.S. PLAINTIFF CASES)

County Of Residence Of First Listed Defendant:    **Duval County, Florida**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

Francis DiGiovanni (#3189)
Stanley C. Macel, III (#492)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street, P.O. Box 2207
Wilmington, Delaware 19899       Telephone: (302) 658-9141

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION   (Place an "X" In One Box Only)

☐ 1 U.S. Government Plaintiff

X 3 Federal Question
    (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" In One Box for Plaintiff
(For Diversity Cases Only)    and one Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" In One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>X 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/ Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br><br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA  (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding     ☐ 2 Removed from State Court     ☐ 3 Remanded from Appellate Court     ☐ 4 Reinstated or Reopened     Transferred from ☐ 5 another district (specify)     ☐ 6 Multidistrict Litigation     Appeal to District Judge from ☐ 7 Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 1051 et seq.

Brief description of cause:
**Trademark Infringement**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND: **Money damages and injunctive relief**

CHECK YES only if demanded in complaint:
JURY DEMAND:    X YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):      JUDGE      DOCKET NUMBERS

| DATE | SIGNATURE OF ATTORNEY OF RECORD | |
|---|---|---|
| **March 15, 2007** | | **Francis DiGiovanni (#3189)** |

FOR OFFICE USE ONLY

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS–44

### Authority For Civil Cover Sheet

The JS–44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs – Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below: federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statues unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 7 - 1 5 4

## ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO FORM  85

*NOTICE OF AVAILABILITY OF A*
*UNITED STATES MAGISTRATE JUDGE*
*TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

_____         _____
(Date forms issued)              (Signature of Party or their Representative)

Dustin Frohlich
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action