IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ING BANK, fsb (d/b/a ING DIRECT), and<br>ING DIRECT BANCORP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-cv-154-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EVERBANK, | ) | |
| EVERBANK FINANACIAL CORP., and | ) | |
| STONE & WARD, INC. (d/b/a STONE WARD) | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO ENLARGE BRIEFING SCHEDULE TO PERMIT
JURISDICTIONAL DISCOVERY NECESSARY TO RESPOND TO
DEFENDANT STONE WARD'S MOTION TO DISMISS**

Francis DiGiovanni (#3189)
Stanley C. Macel, III (#492)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141

Of Counsel:

Jennifer Fraser
CONNOLLY BOVE LODGE & HUTZ LLP
1990 M Street, N.W., Suite 800
Washington, D.C. 20036
(202) 331-7111

Dated: May 22, 2007

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND STAGE OF THE PROCEEDING ..................................................... 2

II.    ARGUMENT ...................................................................................................... 3

   A.  Jurisdictional Discovery is Presumptively Allowable ........................................ 3

   B.  The Facts Known at this Point Strongly Indicate that Personal Jurisdiction Over
       Stone Ward is Proper ...................................................................................... 4

       1.  Specific Jurisdiction Over Stone Ward Can Be Shown ................................ 4

       2.  General Jurisdiction over Stone Ward Can Be Shown ................................. 6

   C.  Jurisdictional Discovery is Necessary to Discover the Extent of Stone Ward's
       Contacts and Actions ...................................................................................... 7

III.   CONCLUSION ................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*ADP Investor Commun. Servs. v. In House Attorney Servs.,*
390 F. Supp. 2d 212 (E.D.N.Y. 2005) ........................................................................... 3, 4

*Atlanta Gas Light Co. v. Semaphore Adver. Inc.,*
747 F. Supp. 715 (S.D. Ga. 1990) ................................................................................... 4

*Clay v. Hopperton Nursery, Inc.,*
533 F.Supp. 476 (D. Ky. 1982) ....................................................................................... 5

*eSpeed, Inc. v. BrokerTec USA, L.L.C.,*
2004 U.S. Dist. LEXIS 19760 (D. Del. 2004) ................................................................ 5

*Hansen v. Neumueller GmbH,*
163 F.R.D. 471 (D. Del. 1995) ........................................................................................ 3

*Helicopteros Nacionales de Columbia S.A. v. Hall,*
466 U.S. 408 (1984) ......................................................................................................... 6

*M & L of Del. Inc. v. Wallace,*
2004 U.S. Dist. LEXIS 21863 (D. Del. Oct. 18, 2004) .................................................. 5

*McNeil Nutritionals, LLC v. Sugar Ass'n,*
2005 U.S. Dist. LEXIS 7628  (D. Del. Apr. 29, 2005) ................................................... 3

*Toys "R" Us, Inc. v. Step Two, S.A.,*
318 F.3d 446 (3d Cir. 2003) ........................................................................................ 3, 7


### <u>Statutes</u>

10 Del. C § 3104  ...................................................................................................... 3, 5, 6

## I.    NATURE AND STAGE OF THE PROCEEDING

This is an action arising under the Lanham Act of 1946, the Delaware Trademark Act, the Delaware Uniform Deceptive Trade Practices Act, and Delaware common law. Plaintiffs ING Bank, fsb, and ING DIRECT Bancorp (collectively, "ING DIRECT"), brought suit against EverBank, an Internet bank, and its advertising agency, Stone & Ward, Inc. ("Stone Ward"), after EverBank and Stone Ward embarked on an advertising and promotional campaign that improperly used and traded upon the ING name and ORANGE BALL DESIGN mark.  Compl. (D.I.1.) at. ¶ 21.  ING DIRECT alleges that EverBank and Stone Ward are liable for trademark infringement, use of false designations, unfair competition, trademark dissolution, injury to business reputation, unfair competition, and unjust enrichment.  *See* Compl. at ¶¶ 37-60.

Stone Ward created the advertisements and marketing materials that infringed ING DIRECT's trademarks, falsely designated advertisements as ING DIRECT advertisements, caused unfair competition with ING DIRECT, diluted ING DIRECT's trademarks, injured ING DIRECT's business reputation, and unjustly enriched EverBank as well as Stone Ward.  Compl. at ¶¶ 37-60.  The accused advertising campaign had a national scope, appearing as internet banner advertisements and in the form of directly distributed marketing material.  Compl. at ¶¶ 37-60.

In response to the Complaint, on May 11, 2007, defendant Stone Ward filed a motion to dismiss (D.I. 11), alleging that ING DIRECT's claims against it should be dismissed for lack of personal jurisdiction.

ING DIRECT has now moved this Court for an extension of time, of approximately seventy-five (75) days, in which to take jurisdictional discovery and subsequently file its opposition to Stone Ward's motion to dismiss. The extension is necessary so that ING DIRECT may obtain information from Stone Ward pertaining to its contacts with Delaware and its actions that affect Delaware citizens and property. The jurisdictional discovery sought by ING DIRECT is necessary to respond to Stone Ward's motion to dismiss.

## II.   ARGUMENT

### A.   Jurisdictional Discovery is Presumptively Allowable

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *McNeil Nutritionals, LLC v. Sugar Ass'n,* 2005 U.S. Dist. LEXIS 7628, at *4 (D. Del. Apr. 29, 2005) (Ex. F) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "Thus, resolution of [a motion to permit jurisdictional discovery] begins with the presumption of allowing discovery to establish personal jurisdiction." *Id.* (quoting *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995)). Plaintiff's obligation on such a motion is to satisfy the Court "that there is some indication that this particular defendant is amenable to suit in this forum." *Hansen*, 163 F.R.D. at 474.

ING DIRECT's claims against Stone Ward in this case are not "clearly frivolous"; to the contrary, they are clearly meritorious. Courts have held that advertising agencies are subject to a court's personal jurisdiction under similar circumstances. In *ADP Investor Communication Services v. In House Attorney Services*, 390 F. Supp. 2d 212, 220 (E.D.N.Y. 2005), the court held that it had personal jurisdiction over an advertising

agency where the agency played a "crucial role" by designing television advertisements later broadcast by the plaintiffs. As the *ADP* court pointed out, "in an age of advanced communications technology, physical presence of the defendant in [the forum state] is no longer dispositive." *Id.* Similarly, the court in *Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F. Supp. 715 (S.D. Ga. 1990), found personal jurisdiction over an advertising agency in a case involving the Lanham Act. The circumstances of the instant case involving Stone Ward likewise give rise to personal jurisdiction over the advertising agency.

> **B.     The Facts Known at this Point Strongly Indicate that Personal Jurisdiction Over Stone Ward is Proper**

ING DIRECT has competent evidence to demonstrate that this Court may properly exercise personal jurisdiction over defendant Stone Ward under the Delaware long-arm statute. 10 DEL. C. § 3104. Allowing discovery on this jurisdictional issue will shed additional light on Stone Ward's contacts with Delaware. Defendant Stone Ward's contacts with the Delaware support both specific and general jurisdiction over Stone Ward.

> **1.     Specific Jurisdiction Over Stone Ward Can Be Shown**

Stone Ward created the accused advertisements, and profited financially by doing so. By creating web-based advertisements for EverBank that so closely resembled and misappropriated ING's trademarks and marketing materials, Stone Ward intentionally designed the advertisements to obtain business from Delaware residents (internet users) at the expense of a Delaware resident (ING DIRECT). The Third Circuit has held that "[the] foreseeability that [a] defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis." *M & L of Delaware, Inc. v.*

*Wallace*, 2004 U.S. Dist. LEXIS 21863, at *6-7 (D. Del. Oct 18, 2004) (Ex. G) (citing *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del 2001)).  "In particular, a defendant's deliberate attempt to enter, advertise, and promote itself can be sufficient to confer specific personal jurisdiction over the defendant."  *Id.* (internal citations omitted). "Even minimal marketing efforts are held sufficient to confer personal jurisdiction."  *Id.* at *7 (citing *Clay v. Hopperton Nursery, Inc.*, 533 F. Supp. 476, 478 (D. Ky. 1982) (holding that where a defendant advertised in a trade journal that had 152 subscribers in the state in question, the exercise of personal jurisdiction was nevertheless appropriate)).

Even if this Court finds that Stone Ward did not specifically target its web-based banner advertising at Delaware residents, this Court may still exercise specific jurisdiction over Stone Ward.  *See* 10 DEL. C. § 3104(C)(1) & (3).  Directly targeting a website to the forum state is only one of the ways to meet specific jurisdiction.  Specific jurisdiction can also be exercised if the defendant purposefully availed itself of conducting activity in the forum state "through sufficient other related contacts."  *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 19760, at *11 (D. Del. 2004) (Ex. H).  Stone Ward intentionally designed the advertisement at issue to trade on the trademarks and goodwill of ING DIRECT, which has its headquarters in Delaware.  This much was admitted by Stone Ward employee Ross Dobson, who stated that the "orange" color of the ball in the Stone Ward-created advertisement was "not accidental."  *See* Article from www.us-banker.com, attached to the Complaint as Exhibit C.  Mr. Dobson further stated that "[w]e wanted to be very relevant to this target audience, the segment of customers that tend to be most attracted to ING.  ING is the market leader, the Goliath. They're the giant."  *Id.*  This is relevant to the specific jurisdiction requirement that there

be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Accordingly, specific jurisdiction over Stone Ward can and will be demonstrated.

**2.    General Jurisdiction Over Stone Ward Can Be Shown**

Stone Ward's ongoing contacts with Delaware are sufficient for this court to exercise general jurisdiction over Stone Ward. Delaware courts have interpreted 10 DEL. C. § 3104(C)(4) as a general jurisdiction provision. That provision states that "as to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent . . . [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." In other words, this provision allows the Court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action.

Stone Ward has significant contact with Delaware. Stone Ward's website boasts national clients including Meineke Car Care Centers, Terminix, and TCBY. *See* EX. A hereto (from http://www.stoneward.com/clients/). This is in addition to other national clients. Upon information and belief, Stone Ward creates advertisements for these companies that directly target Delaware residents and appear in Delaware publications (or in Delaware franchise locations) on a regular basis. Stone Ward's website describes Stone Ward's radio, television, interactive, and "guerrilla" advertisements for Terminix,

and television and print advertisements for Meineke. *See* Ex. B hereto (from http://www.stoneward.com/work/). In addition, Stone Ward has created in-store advertising for national clients, including the TCBY frozen yogurt franchises. *See* Ex. C hereto (*Adweek* article dated March 4, 2003)[1]. According to Adweek, "Stone Ward has handled the [TCBY] brand's in-store marketing and freestanding inserts." *Id*. That would mean that Stone Ward has been responsible for the in-store advertising and promotion at the seven (7) TCBY franchises located in the state of Delaware. *See* Ex. D hereto (printout of http://storelocator.tcby.com/locator). Further, Stone Ward has created interactive website marketing for TCBY, which allows internet users (including Delaware internet users) to interact with the website and navigate through various images and choices. *See* Ex. E hereto (from http://www.stoneward.com/work/).

This satisfies the requirements of general jurisdiction, which requires systematic and continuous contact between the defendant and the forum state. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 466, 453-54 (3d Cir. 2003).

C. **Jurisdictional Discovery is Necessary to Discover the Extent of Stone Ward's Contacts and Actions**

ING DIRECT needs to take discovery in order to oppose certain of the arguments raised by Stone Ward in its motion to dismiss. Stone Ward alleges that it lacks minimum contacts with Delaware, and thus it does not meet either the requirements of the Delaware long-arm statute (Def.'s Br. pp. 4-8), or Constitutional due process (Def.'s Br. pp. 8-10). ING DIRECT needs discovery to test Stone Ward's assertion that it "does not do business in Delaware, has no office in Delaware, has no clients in Delaware and no contacts with Delaware." Def.'s Br. p. 1. Similarly, ING DIRECT needs discovery to ascertain the

---

[1] Available at http://www.adweek.com/aw/regional/east/article_display.jsp?vnu_content.

accuracy of Stone Ward's position that it has never "purposefully directed its activities to Delaware or its residents," derived "revenue from Delaware," or "engaged in a persistent course of conduct in Delaware." Def.'s Br. p. 2.

ING DIRECT seeks jurisdictional discovery to learn the following (among other) information about Stone Ward's contacts with Delaware and activities relating to its advertising, marketing, and promotional campaigns:

> (1) the type and nature of business Stone Ward has solicited in person or by other mediums in Delaware,
>
> (2) the business contacts Stone Ward has made with Delaware,
>
> (3) the advertisements Stone Ward has created and/or put into the stream of commerce directed towards Delaware residents,
>
> (4) the advertisements Stone Ward has created and/or published in Delaware publications,
>
> (5) the level of interactivity of websites designed by Stone Ward that solicit Delaware business,
>
> (6) the level of involvement Stone Ward has in placing the ads it designs into the stream of commerce, and
>
> (7) any training Stone Ward employees may have received in Delaware.

This information will show that Stone Ward's contacts with Delaware meet the requirements of the Delaware long-arm statute as well as the minimum contacts required under the Due Process Clause.

Under the current schedule, ING DIRECT's opposition to defendant Stone Ward's motion would be due May 25, 2007. In light of the approaching deadline, ING DIRECT respectfully moves for an extension of the normal briefing deadlines in order to permit ING DIRECT to conduct the necessary discovery and to prepare its opposition.

ING DIRECT believes that the requisite discovery can be completed within a period of approximately sixty (60) days. ING DIRECT proposes a single deposition pursuant to Fed. R. Civ. P. 30(b)(6) on topics pertaining to Stone Ward's contacts with Delaware and the facts relevant to personal jurisdiction. ING DIRECT also proposes to serve some document requests that are narrowly tailored to the facts relevant to personal jurisdiction. Assuming that in that time frame defendant Stone Ward produces appropriate documents and a prepared witness, sixty (60) days should be sufficient to conduct the necessary discovery. ING DIRECT also seeks an additional 15 days to prepare and file its answering brief to Stone Ward's motion to dismiss.

## III.    **CONCLUSION**

ING DIRECT has made an appropriate showing that its claims against Stone Ward are not "clearly frivolous," and that Stone Ward is amenable to suit in this Court, whether it be pursuant to specific or general jurisdiction. ING DIRECT should thus be granted the opportunity to take jurisdictional discovery of Stone Ward, and to subsequently file its answering brief to Stone Ward's motion to dismiss.

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Stanley C. Macel, III (#492)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141

Of Counsel:

Jennifer Fraser
CONNOLLY BOVE LODGE & HUTZ LLP
1990 M Street, N.W., Suite 800
Washington, D.C.  20036
(202) 331-7111

Dated:  May 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2007, the attached **PLAINTIFFS'**

**OPENING BRIEF IN SUPPORT OF THEIR MOTION TO ENLARGE BRIEFING**

**SCHEDULE TO PERMIT JURISDICTIONAL DISCOVERY NECESSARY TO**

**RESPOND TO DEFENDANT STONE WARD'S MOTION TO DISMISS** was

served upon the below-named counsel of record at the address via hand delivery and e-

mail:

Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Richard D. Kirk
Ashley B. Stitzer
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)

# EXHIBIT
# A



PEOPLE

WORK

CAPABILITIES

SPECIALTIES

CLIENTS

CAUSES

STAFF PICKS

CAMP REALITY

CONTACT

**Building good is the basis for choosing our clients.**

This means that we choose not to work with clients who have products and services that hurt people or do harm to our world. Instead, you'll find that our clients are good people using their talent to build great companies known for their integrity, as well as their business prowess. We're proud of every one of them.

And here are just a few.

**AMERICAN TAEKWONDO ASSOCIATION**
1500 schools and clubs and over 300,000 members worldwide.

**ARKANSAS DEPARTMENT OF ECONOMIC DEVELOPMENT**
ADED programs have resulted in Arkansas being named the number one business climate in the South.

**BAPTIST HEALTH**
The largest not-for-profit healthcare organization in Arkansas.

**DILLARD'S**
One of the nation's largest fashion apparel and home furnishings retailers with stores across the U.S.

**E.C. BARTON & COMPANY**
Parent company of five subsidiaries specializing in retail building materials. Locations across eight states, E.C. Barton is a major retailer in the South and Southeast.

**ENTERGY**
A Fortune 200 company operating five utility subsidiaries providing retail electric services to 2.6 million customers in four states, nuclear plants in six states, and a non-nuclear wholesale assets business.

**MEINEKE CAR CARE CENTERS**
The second largest specialist automotive service franchise in the Americas with stores nationwide.

**TERMINIX**
The largest termite and pest control company in the world with service centers worldwide.

NEWS & FEATURES

# EXHIBIT
# B



PEOPLE

WORK

CAPABILITIES

SPECIALTIES

CLIENTS

CAUSES

STAFF PICKS

CAMP REALITY

CONTACT

TV

PRINT

OUT-OF-HOME

RADIO

INTERACTIVE

GUERILLA

PR

EMPLOYEE ENGAGEMENT

NEWS & FEATURES

SHOW ALL

# EXHIBIT
# C



**Hispanic Retail 360 Summit**
**August 1-3, 2007 • Dallas, TX**
Click for more information



May 21, 2007



LOGIN — SUBSCRIPTION REQUIRED
SUBSCRIBE ▶▶ CLICK HERE



ARTICLE SEARCH   ADVANCED SEARCH | HELP



◉ ADWEEK   ○ WEB    Go

HOME | REGIONAL NEWS | IN PRINT | CREATIVE | BEST SPOTS | ACCOUNTS IN REVIEW | IQ INTERACTIVE | JOBS | EMAIL SIGN-UP

## East

CHANGE REGION  All Regions    go

Adweek Subscribers
Activate Your
Online Account Now

Adweek Directory
Search Ad Agencies
Advertising Network
Advertising/Marketing
African-American Ad
Asian-American Adv
Association/Club/Soc

Search



Search Directories
Online Directories Demo
Industry Reports
Calendar of Events
Adweek Events
Adweek Webinars
Adweek Custom Media
Adweek Books
About us
Contact us
Advertising Opportunities
FAQ

Ads by Google

SAVE | EMAIL | PRINT | MOST POPULAR | RSS | REPRINTS

# Yogurt Becomes LevyTenny's First Course

*March 04, 2003*

By Mindy Charski and Ann M. Mack

**DALLAS** TCBY has shifted its account from Stone Ward to LevyTenny, said Rich Levy, creative director at the New York startup.

Sources estimate the business of the Salt Lake City-based client will be worth $10-12 million.



**TARGETING TOOLBOX**

Check out the new aetnadsales.com online resource center for insights in a hurry.

AETN

The move followed the approval of TCBY's franchise association. The agency presented creative and strategy to the group last Friday in Scottsdale, Ariz.

It is the first client for the 2-month-old shop, started by Levy and president James Tenny, formerly a top executive at Della Femina Rothschild Jeary and Partners. "We're happy because we're starting an agency with a large, recognizable, national brand," said Levy.

Television and radio work is due to break in early May, Levy said.

### MORE NEWS
- Kipnis Gets a New Role at Ogilvy
- A-Team Adds Advisors
- Y&R Taps Talent Chief
- Wunderman's Taylor Rises
- MEC's Cipolla Shifts to MediaCom
- Davis Returns to Kaplan Thaler Group
- Red Tettemer Goes to Hollywood for CD
- Goya Broadens Mainstream Appeal
- Post-Anna Nicole, TrimSpa Finds 'Inspiration'

### NATIONAL / INT'L NEWS
- Q&A: aQuantive's McAndrews
- U.S. Cellular Moves to Riney
- Chrysler Likely to Overhaul Brands
- Deals Make for Strange Bedfellows
- Verizon Shift Boosts McCann

▶▶ SPONSORED BY

Order
MY M&M
for your
business
today!





CLICK HERE
©TM/SMars, Inc.



ADWEEK iQ
FEATURED LISTIN

**Rocket Your Traffic**
With Text Link
Ads $100 Free Text
Link Ads
www.Text-Link-
Ads.com

nielsen Media, Marketing, & Arts Group

> **Brandweek**
> **Editor & Publisher**
> **Mediaweek**
> **Marketing y Medios**
> **American Artist**
> **Photo District News**
> **Photoserve**
> **Independent
  Photography Network**
> **Clio Awards**

The effort will target 18- to 40-year-old women and moms, who are concerned about their health and the health of their children. "There are certain benefits that will speak to people who are concerned with fat in their diet. We will let them know that they can indulge themselves without tipping the scale in the wrong direction," said Paul Kershisnik, a 9-year Sprint PCS executive who joined as marketing director of TCBY a few weeks ago. Creative executions will "reinforce the fun [nature] of the brand and the product without harping on the obesity issue," he added.

Corporate executives had already approved of LevyTenny after an earlier round of creative and strategic presentations, which also included Stone Ward of Little Rock, Ark.

Frann Wolfe, senior vice president of marketing for TCBY parent Mrs. Fields Famous Brands, has said the client put its account into review because it wants to "reinvigorate the brand with a new vision and new way of looking at the business."

She said the franchise group wants to portray the brand as "contemporary, exciting and delivering the benefits our consumers originally came to us for." The new agency will be charged with helping to grow sales at existing stores and in new locations, she said.

Wolfe, who previously worked with LevyTenny co-founder Levy's wife, Beverly Stotz, said Levy got in touch in January when he opened the shop. The overture came just as TCBY began seeking a "potentially new agency alliance," Wolfe said.

Although Wolfe declined to comment on billings, TCBY is expected to increase its advertising expenditures from previous years. CMR does not report media spending for 2001 or 2002, but Stone Ward has handled the brand's in-store marketing and freestanding inserts.

Wolfe said TCBY, which uses "All of the pleasure, none of the guilt" as a tagline, intends to return to nationally broadcast spots in the future.

Stone Ward, formerly Stone & Ward, handled the yogurt chain's creative and media account for 12 years.

**Senior Advertising
Sales Executive**
Orlando, FL 32819
PhotoActive.com LLC

**Ad Sales**
New Canaan, CT
BillboardBands.net

**Web
Copywriter/Content
Specialist - Bilingual
English/Spanish**
Westlake Village, CA
91361
Jafra Cosmetics
International, Inc.

More jobs

apicio

 SEARCH JOBS

SAVE | EMAIL | PRINT | MOST POPULAR | RSS | REPRINTS
SUBSCRIBE TO ADWEEK »

Subscribe I Email Alerts & Newsletters I Print Subscriber Access I Advertising Opportunities I Contact Us I Site Map I RS:

What kinds of commercials connect with Hispanic consumers?

© 2007 Nielsen Business Media, Inc. All rights reserved. Terms of Use  |  Privacy Policy

# EXHIBIT
# D



# STORE LOCATIONS

| CAKES AND PIES | TEMPTING TREATS | KID'S CORNER | GIVE YOUR FEEDBACK | SWEET GREETS |

## RESULTS

SHOWING 1 - 7 OF 7 (0.0039 SEC.)

**FOX RUN SHOPPING CENTER**
112 FOX HUNT DR
BEAR, DE 19701
(302) 834-7490

VIEW MAP

**DOVER MALL**
1365 N DUPONT HWY
DOVER, DE 19901
(302) 678-9797

VIEW MAP

**MARKETPLACE THE**
19287 MILLER RD
REHOBOTH BEACH, DE 19971
(302) 226-0690

VIEW MAP

**FAIRFAX SHOPPING CENTER**
2105 A CONCORD PIKE
WILMINGTON, DE 19803
(302) 656-0115

VIEW MAP

**SECREST SHOPS UNIT 4**
GARFIELD & ATLANTIC AVE
BETHANY BEACH, DE 19930
(302) 537-2266

VIEW MAP

**NEWARK**
72 EAST MAIN ST
NEWARK, DE 19711
(302) 738-3445

VIEW MAP

**REHOBOTH BEACH**
160 REHOBOTH AVE
REHOBOTH BEACH, DE 19971
(302) 226-7801

VIEW MAP

## NEW SEARCH

**ADVANCED USA STORE LOCATOR**
CITY

ZIP

SELECT SEARCH RADIUS
- ⦿ 10 MILES
- ○ 20 MILES
- ○ 20 NEAREST STORES

[ FIND ]

**INTERNATIONAL STORE LOCATOR**
SELECT A COUNTRY FROM THE DROP BOX.
- select - [ FIND ]

©2005 TCBY.COM. ALL RIGHTS RESERVED

# EXHIBIT
# E

CLOSE

PEOPLE

WORK

CAPABILITIES

SPECIALTIES

CLIENTS

CAUSES

STAFF PICKS

CAMP REALITY

CONTACT



View Walk-through

**TCBY**
Launch TCBY low-carb frozen yogurt in an already crowded category.

NEWS & FEATURES

# EXHIBIT
# F

LEXSEE 2005 U.S. DIST. LEXIS 7628

**McNEIL NUTRITIONALS, LLC, Plaintiff, v. THE SUGAR ASSOCIATION, et al., Defendants.**

**C.A. No. 05-69 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 7628*

**April 29, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a distributor of a sugar substitute, sued defendants, a sugar association, its member companies, a sugarbeet association, and a public relations firm, alleging a violation of § 43(a) of the Lanham Act, *15 U.S.C.S. § 1125*(a), and violations of Delaware's trade practices and unfair competition laws. Defendants moved to dismiss, alleging that the court lacked personal jurisdiction over 15 of the 20 defendants.

**OVERVIEW:** Thirteen of the 17 member companies disavowed any direct contacts with Delaware or participation in the statements that appeared on the sugar association's website about which plaintiff complained. However, the 13 companies were listed on the website, and while the court was not prepared to say that was enough to establish personal jurisdiction, such proof was some indication that the member companies were amenable to suit, and it was enough to allow plaintiff to take limited and appropriate jurisdictional discovery from the 13 objecting member companies. Although a closer question, the fact that the website verified that the sugarbeet association had four representatives on the sugar association's board was enough to permit limited jurisdictional discovery to be taken from it as well. Finally, as for the public relations firm, the evidence suggested that besides setting up the website, it sent information regarding the product to a Delaware reporter, and held itself out as a contact point. While those acts may have been insufficient to establish personal jurisdiction, they were sufficient to permit limited discovery from the firm.

**OUTCOME:** The court denied the motion to dismiss and ruled that plaintiff would be permitted to take limited and appropriate jurisdictional discovery from all 15 defendants that challenged the court's personal jurisdiction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Discovery > Relevance*
[HN1] Although a plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous. Thus, resolution of a motion to dismiss begins with the presumption in favor of allowing discovery to establish personal jurisdiction. However, the court must be satisfied that there is some indication that the particular defendants are amenable to suit in the forum. For example, a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery. Likewise, a mere unsupported allegation that a defendant transacts business in an area is clearly frivolous. Rather, there must be some competent evidence to demonstrate that personal jurisdiction over a defendant might exist before allowing discovery to proceed.

**COUNSEL:** [*1] For McNeil Nutritionals LLC,

2005 U.S. Dist. LEXIS 7628, *1

Plaintiff: John G. Day, Steven J. Balick, Ashby & Geddes, Wilmington, DE; Sarah Elizabeth DiLuzio, Potter Anderson & Corroon, LLP, Wilmington, DE.

For The Sugar Association, The Amalgamated Sugar Company, American Crystal Sugar Company, American Sugar Cane League, American Sugar Refining Inc., Atlantic Sugar Association, Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Okeelanta Corporation, Osceola Farms Company, Rio Grande Valley Sugar Growers Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, United States Sugar Corporation, Western Sugar Cooperative, Wyoming Sugar LLC, American Sugarbeet Growers Association, Qorvis Communications LLC, Defendants: Sarah Elizabeth DiLuzio, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM**

**I. INTRODUCTION**

On February 8, 2005, plaintiff McNeil Nutritionals, LLC ("McNeil") brought the present action against The Sugar Association, The Sugar Association's seventeen member companies, n1 the American [*2] Sugarbeet Growers Association, and Qorvis Communications, LLC ("Qorvis"). The complaint alleges one count of false advertising in violation of Section 43(a) of the Lanham Act, *15 U.S.C. § 1125(a) (1998)*, one count of deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, *Del. Code Ann. tit. 6, §§ 2531 et seq.,* and one count of unfair competition and product disparagement in violation of Delaware common law. (D.I. 1 PP 60-71.) On March 25, 2005, a Motion to Dismiss was filed on behalf of all twenty defendants, in which it is argued (among other things) that the court does not have personal jurisdiction over fifteen of the defendants. (D.I. 28.) McNeil responded with a Motion for Enlargement of Briefing Schedule in Order to Permit Discovery Necessary to Respond to Motion to Dismiss.

(D.I. 30.) For the following reasons, the court will grant McNeil's motion and permit limited and appropriate jurisdictional discovery.

> n1 The Sugar Association's seventeen member companies include: The Amalgamated Sugar Co., American Crystal Sugar Co., American Sugar Cane League, American Sugar Refining, Inc., Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Okeelanta Corp., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, United States Sugar Corp., Western Sugar Coop., and Wyoming Sugar Co.

[*3]

**II. DISCUSSION**

The Sugar Association is a Delaware non-profit corporation (*D.I. 28 Ex. C P 1),* comprising seventeen member companies who are "producers and growers of sugar in the United States" (*D.I. 34 Ex. 3).* Its stated mission is "educating health professionals, media, government officials, and the public about sugar's goodness." (Id.) McNeil, on the other hand, is a Delaware limited liability company that markets products containing the no-calorie sweetener sucralose, which is sold under the name Splenda. (*D.I. 1 P 3.*) Obviously, sugar and Splenda are competing products. McNeil alleges that a decrease in sugar consumption in recent years (*id. P 37*) has led The Sugar Association to mount "a false and malicious smear campaign" against Splenda through press statements and internet websites, including The Sugar Association's "Truth About Splenda" website (id. PP 1-2; see also id. PP 41-55). Consequently, McNeil brought the present action against The Sugar Association and nineteen others. As mentioned above, the twenty defendants include The Sugar Association, its seventeen member companies, the American Sugarbeet Growers [*4] Association, and Qorvis. Of those twenty, thirteen member companies, the American Sugarbeet Growers Association, and Qorvis argue that they do not have sufficient contacts with Delaware for the court to exercise personal jurisdiction over them in this matter. Rather than answering the defendants' contentions, McNeil argues it

Case 1:07-cv-00154-GMS    Document 15-7    Filed 05/22/2007    Page 4 of 6

Page 3
2005 U.S. Dist. LEXIS 7628, *4

should be permitted to engage in limited jurisdictional discovery.

[HN1] "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)* (internal citations omitted). "Thus, resolution of this motion begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. Oct. 5, 1995)*. However, "the court must be satisfied that there is some indication that [these] particular defendant[s] [are] amenable to suit in this forum." *Id. at 475*. For example, "a plaintiff may not rely on the bare allegations in [*5] his complaint to warrant further discovery." *Id. at 476*. Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)*. See also *B.L. Poe v. Babcock Int'l, 662 F. Supp. 4, 7 (M.D. Pa. Mar. 14, 1985)* ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." *Hansen, 163 F.R.D. at 475*. See also *Impact Labs, Inc. v. X-Rayworld.com, Inc., 2003 U.S. Dist. LEXIS 12700, No. 03-211-GMS, 2003 WL 21715872, at *3 (D. Del. July 24, 2003)* (permitting jurisdictional discovery on the basis of an affidavit merely reflecting that a defendant-company's President and CEO held out the defendant-company's [*6] principal place of business as Delaware).

## A. The Thirteen Member Companies

The thirteen member companies n2 objecting to personal jurisdiction disavow (by individual affidavits) the notion that they have any direct contacts with Delaware. n3 (See D.I. 28 Exs. D-P.) Furthermore, The Sugar Association's President and CEO, Andrew C. Briscoe III, asserts in his affidavit ("the Briscoe affidavit") that The Sugar Association did not obtain either "approval" or "specific approval" from board

members or member companies in issuing the various statements complained of in McNeil's complaint. (D.I. 28 Ex. C PP 8-12.) Therefore, the defendants argue, "McNeil should be required to make a preliminary showing that the individual Members were involved in determining the content of the 'Truth About Splenda' website or engaged in other activity generically charged in the complaint before this Court permits discovery." (D.I. 31 at 3.)

n3 One exception is Imperial Sugar Co., a Texas corporation. Imperial Sugar admits to (1) deriving less than 0.1% of its revenue in Delaware, (2) selling to Delaware customers over the internet, and (3) filing for Chapter 11 protection in Delaware in 2001, which was allegedly resolved within that same year. (D.I. 28 Ex. H.)

[*7]

n2 These thirteen companies include: American Crystal Sugar Co., American Sugar Cane League, Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, Western Sugar Coop., and Wyoming Sugar Co.

McNeil responds by pointing to the following statement on The Sugar Association's website, on a page entitled "Who We Are":

The Sugar Association's member companies are producers and growers of sugar in the United States. The Board of Directors is comprised of decision-making representatives from each of these companies or organizations. . . . Three advisory committees *comprised of member company staff* help guide the direction of Public Policy, Public Education, and Scientific Affairs for the Association.

2005 U.S. Dist. LEXIS 7628, *7

(*D.I. 34 Ex. 3* (emphasis added).) n4 Furthermore, each of the thirteen objecting member companies is listed on the website as either (or both) a board member or a member company. [*8] Of course, it is well established that a defendant's mere "status as a stockholder and officer of a Delaware corporation is an insufficient basis for the court to exercise personal jurisdiction over him pursuant to [the long-arm statute]." *Impact Labs, 2003 U.S. Dist. LEXIS 12700, 2003 WL 21715872, at *2.* However, McNeil's theory of jurisdiction is that the member companies are (1) "acting under the guise of a Delaware corporation (the [Sugar] Association)," (2) "to falsely attack and disparage a product sold by a Delaware limited liability company (McNeil)," and (3) "thereby causing economic injury in the State of Delaware." (D.I. 33 at 8.) Although the court is not prepared at this juncture to hold that proof of these three assertions would necessarily establish personal jurisdiction, such proof would at least constitute "some indication" that the member companies are amenable to suit in Delaware. Indeed, the website's assertion that staff from member companies help to guide public policy, public education, and scientific affairs of The Sugar Association certainly gives evidentiary credence, albeit thinly, to McNeil's jurisdictional theory. Moreover, the excerpt satisfies the defendants' [*9] demand that McNeil make a preliminary showing as to the member companies' involvement in "The Truth About Splenda" website or other activities charged in the complaint. Therefore, the court will permit McNeil to take limited and appropriate jurisdictional discovery from the thirteen objecting member companies.

> n4 Excerpts from The Sugar Association's website were submitted as part of the affidavit of McNeil's counsel, Steven A. Zalesin. (D.I. 34.) The court notes that The Sugar Association's website is separate from the "Truth About Splenda" website, excerpts of which were also submitted as part of Zalesin's affidavit.

**B. The American Sugarbeet Growers Association**

According to the Briscoe affidavit, the American Sugarbeet Growers Association is not a member of The Sugar Association. (*D.I. 28 Ex. C P 7.*) Instead, it allegedly "facilitates the selection" of four sugarbeet growers to sit on The Sugar Association's board of directors in an advisory capacity only. (Id.) Furthermore, Luther Markwart, [*10] Executive Vice President of the

American Sugarbeet Growers Association, submitted an affidavit in which he asserts that the advisory board members representing his organization have "no authority to approve any policy, actions, or financial obligations taken by the Sugar Association." (D.I. 28 Ex. Q P 18.) Markwart also denies any contacts between his organization and Delaware. (D.I. 28 Ex. Q.) The only other evidence regarding the American Sugarbeet Growers Association that the court can find is in the website excerpt provided by McNeil, which merely verifies that the organization has four representatives on The Sugar Association's board of directors. (*D.I. 34 Ex. 3.*)

The question of whether to permit jurisdictional discovery with regard to this defendant is a closer case. The dispositive evidence regarding the member companies is the website's statement that staff from *member* companies help to guide the direction of public policy, public education, and scientific affairs for The Sugar Association. Yet, it is undisputed that the American Sugarbeet Growers Association is *not* a member company. Were the court to strictly construe the website's language, the evidence [*11] would be inapposite. However, taking notice of the fact that statements on the internet are often written without the same precise intent as are, say, claims in a patent, and recalling the presumption in favor of permitting jurisdictional discovery, the court is convinced that the evidence presented by McNeil is sufficient to permit limited and appropriate jurisdictional discovery to be taken from the American Sugarbeet Growers Association as well.

**C. Qorvis**

Qorvis is allegedly a public relations firm that aids The Sugar Association in promoting its "education program about the chemical sucralose." (D.I. 28 Ex. R P 19.) But according to the affidavit of Michael Petruzzello, Qorvis' Managing Partner, the "Truth About Splenda" website "was designed and is maintained by Qorvis' web designer in Virginia." (Id.) Petruzzello further asserts that the "website, which is not targeted at Delaware or its residents, does not advertise Qorvis' services, allow visitors to contract for Qorvis' services, offer any products or services for sale, solicit donations of any kind, or generate revenues for Qorvis." (Id.) The only contact with Delaware admitted by Qorvis in connection with its work [*12] for The Sugar Association is the

sending of one postcard, out of five to ten thousand sent as part of a national mailing campaign regarding sucralose, to a health reporter for the Wilmington News Journal in New Castle, Delaware. (*Id. P 16.*) Qorvis also maintains a website accessible from Delaware, but it "is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents." (*Id. P 17.*) Qorvis' other admitted contacts with Delaware are relatively insignificant and unrelated to the present litigation. However, Petruzello's affidavit fails to mention that the "Truth About Splenda" website contains the following invitation: "For more information about the 'Truth About Splenda' campaign or to get involved, please contact Rich Masters at Qorvis Communications. . . ." The sentence continues by offering Masters' contact information, including his telephone number and email address. (*D.I. 34 Ex. 1.*)

In their motion to dismiss, the defendants argue that the mere ownership or maintenance of a passive website accessible in Delaware does not render Qorvis amenable to suit in this jurisdiction. (D.I. 28 at 19.) Here, [*13] however, the evidence suggests Qorvis has done more than that. In addition to creating and maintaining the "Truth About Splenda" website for a Delaware corporation, Qorvis sent information regarding sucralose to a Delaware reporter, and held itself out as the point of contact for anyone interested in learning about or becoming involved with the campaign of a Delaware corporation. While these acts may or may not ultimately be sufficient to establish personal jurisdiction, they certainly give "some indication" that Qorvis is amenable to suit in Delaware. Thus, McNeil will be permitted to take limited and appropriate jurisdictional discovery from Qorvis.

**III. CONCLUSION**

For the aforementioned reasons, McNeill will be permitted to take limited and appropriate jurisdictional discovery from all fifteen above-mentioned defendants.

Dated: April 29, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

IT IS HEREBY ORDERED THAT:

1. McNeil Nutritionals, LLC's ("McNeil") Motion for Enlargement (D.I. 30) be GRANTED;
2. McNeil be permitted to take limited and appropriate jurisdictional discovery from the following fifteen defendants: American [*14] Crystal Sugar Co., American Sugar Cane League, Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, Western Sugar Coop., Wyoming Sugar Co., the American Sugarbeet Growers Association, and Qorvis Communications, LLC;
3. McNeil shall answer the defendants' Motion to Dismiss (D.I. 28) by July 29, 2005; and
4. The defendants shall reply to McNeil's answer in the time provided by the Local Rules.

Dated: April 29, 2005

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT
# G

LEXSEE 2004 U.S. DIST. LEXIS 21863



Cited
As of: May 22, 2007

**M & L OF DELAWARE, INC., a Delaware corporation, Plaintiff, v. BENJAMIN WALLACE and JOSEPH MALONE, DVM, Defendants.**

**Civil Action No. 03-521-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 21863*

**October 18, 2004, Decided**

**DISPOSITION:** Malone's motion to dismiss was granted and Wallace's motion to dismiss was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a horse trainer and a veterinarian, moved to dismiss plaintiff horse owner's action for breach of contract, negligence, and trespass to chattels for lack of personal jurisdiction. The horse trainer also moved to dismiss the action for insufficient service of process.

**OVERVIEW:** The owner hired the trainer and agreed it have its horse shipped to Canada for training. The trainer decided that the horse should be castrated in order to improve its performance. The veterinarian performed the surgery in Canada. The owner brought an action against defendants to recover damages it allegedly suffered as a result of the castration. The veterinarian moved to dismiss for lack of personal jurisdiction. The trainer moved to dismiss for lack of personal jurisdiction and insufficient service of process. The court found that the trainer's horses took part in six races within the State of Delaware. The trainer held a racing license in Delaware. The trainer's actions in Delaware could be viewed as a kind of marketing because his actions in Delaware led the owner to contact him. No notions of fair play and substantial justice would be offended by requiring him to defend himself in Delaware. With respect to the

veterinarian, the court found that, at the time of the incident, there were absolutely no contacts between him and Delaware. Finally, the court held that the trainer would not be unduly harmed by allowing the owner additional time to properly effect service of process.

**OUTCOME:** The court granted the veterinarian's motion to dismiss the action. The court denied the horse trainer's motions to dismiss the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN1] A plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendants. When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a prima facie case, with the record viewed in the light most favorable to the plaintiff.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General*

2004 U.S. Dist. LEXIS 21863, *

*Overview*
[HN2] The determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. First, the court must determine whether the language of the Delaware long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)*, reaches the defendant. Second, if the court finds that the defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN3] The Delaware long-arm statute is construed broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause of the Fourteenth Amendment. Nevertheless, a court begins its analysis with the Delaware long-arm statute.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN4] See *Del. Code Ann. tit. 10, § 3104(c)(1)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN5] Delaware state courts interpret the "transacting business" provision of *Del. Code Ann. tit. 10, § 3104(c)(1)* as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN6] Once it is determined that there is personal jurisdiction under the state long-arm statute, the court must look to ensure that the granting of specific personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. The United States Court of

Appeals for the Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. In particular, a defendant's deliberate attempt to enter, advertise, and promote itself can be sufficient to confer specific personal jurisdiction over the defendant. Even minimal marketing efforts are held sufficient to confer personal jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN7] Once it is decided that a defendant purposefully established minimum contacts within the forum state, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. The United States Court of Appeals for the Third Circuit has held that cases are rare in which minimum requirements in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction even though the defendant has purposefully engaged in forum activities.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
[HN8] *Fed. R. Civ. P. 4(m)* does not contain a time limit for serving foreign defendants.

**COUNSEL:** [*1] For M & L OF DELAWARE, INC., A DELAWARE CORPORATION, Plaintiff: Adam L. Balick, Balick & Balick Wilmington, DE.

For BENJAMIN WALLACE, Defendant: Adam Wyatt Poff, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For JOSEPH MALONE, DVM, Defendant: Robert J. Katzenstein, Smith, Katzenstein, & Furlow, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

2004 U.S. Dist. LEXIS 21863, *1

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

M & L of Delaware, Inc., a Delaware corporation ("M&L" or "Plaintiff") filed suit against Benjamin Wallace ("Wallace") and Joseph Malone, D.V.M. ("Malone") alleging breach of contract, negligence, and trespass to chattels in connection with the castration of Plaintiff's horse known as "Mr. Commander." Subject Matter Jurisdiction is invoked under *28 U.S.C. § 1331*.

On October 2, 2003, Malone filed a motion to dismiss M&L's complaint for lack of personal jurisdiction. (Docket Item "D.I." 5.) On December 3, 2003, Wallace filed a motion to dismiss M&L's complaint for lack of personal jurisdiction and insufficient service of process. For the reasons set forth below, Malone's motion to dismiss is granted and Wallace's [*2] motion to dismiss is denied.

**II. BACKGROUND**

Plaintiff is a corporation involved with the breeding and racing of standardbred horses. (D.I. 22, Ex. A at 1.) Wallace is a horse trainer who has previously traveled to Delaware to race horses and has sent here horses he has trained. (D.I. 24 at 2.) Having seen Wallace's horses in Delaware on one of those occasions, representatives of the Plaintiff contacted Wallace by telephone on May 28, 2002 to discuss the possibility of Wallace training Mr. Commander. (D.I. 22, Ex A at 2.) Shortly thereafter, the parties arranged to have Mr. Commander shipped to Ontario, Canada for training with Wallace. (*Id.*) After the horse arrived in Ontario, Wallace decided that, in order to improve the horse's performance, it should be castrated. (D.I. 19, Ex. A at 2.) He then called Malone, a veterinary doctor, and engaged his services to castrate Mr. Commander. (*Id.*) Malone performed the surgery in Ontario on June 6, 2002. (*Id.*) After learning of Mr. Commander's castration M&L, had the horse transferred to another trainer. (D.I. 22, Ex. A at 2.)

Wallace does not have a place of business in Delaware, nor does he advertise in Delaware or [*3] maintain a website. (D.I. 24 at 1, 5-6.) From 1999 through 2002, horses trained by Wallace raced in Delaware on six occasions. (D.I. 22, Ex. E.) Wallace personally attended two races in 1999; he did not attend the other above-mentioned races. (D.I. 24 at 2.) Horses trained by Wallace have won $ 62,397 in Delaware. (D.I. 22, Ex. E.) From at least 1999 through 2002, Wallace had a license to train horses in Delaware and has been listed as the trainer of record for horses he has sent here. (D.I. 24, Ex. A; D.I. 22, Ex. F at 41; D.I. 22, Ex. E.) Delaware law prohibits trainers from taking part in races without first obtaining a permit. (D.I. 22, Ex. Fat 41.)

While Malone has performed work for the Plaintiff and at one time was licensed as a Veterinarian in Delaware, that license lapsed in 2000, and, at the time he performed the surgery at issue, he had no ties to Delaware. (D.I. 11 at 4-5; D.I. 6, EX. 1.) Malone maintains a website that is accessible in Delaware. (D.I. 11, Ex D.) With respect to the surgery, Malone had no contact with the Plaintiff or anyone else in Delaware.

On May 30, 2003, Plaintiff filed a complaint against Wallace and Malone to recover damages it allegedly suffered [*4] as a result of Mr. Commander's castration. (D.I. 1.) In August of that year, Plaintiff attempted to serve Wallace in Ontario, however, this attempt did not satisfy the requirements for service under the Hague Convention for service in Canada. *See infra* at 7. Plaintiff maintains that it is now in the process of serving Wallace under the Hague Convention. (D.I. 22 at 9-20.)

**III. DISCUSSION**

[HN1] The plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over the defendants. *Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 699 (D. Del. 2001).* When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case, with the record viewed in the light most favorable to the plaintiff. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., 1999 U.S. Dist. LEXIS 12455 at *5-6 (D. Del. Aug. 3, 1999); Siemens Aktiengesellschaft v. LG Semicon Co., Ltd., 69 F. Supp. 2d 622, 624 (D. Del. 1999).*

[HN2] The determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. *Broadcom, 167 F. Supp. 2d at 700:* [*5] *Siemens, 69 F. Supp. 2d at 624; Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir. 1985).* First, the court must determine whether the language of the Delaware long-arm statute, *10 Del. C. § 3104(c)*, reaches the defendant. *Broadcom, 167 F. Supp. 2d at 700.*

2004 U.S. Dist. LEXIS 21863, *5

Second, if the court finds that the defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the *Due Process Clause of the Fourteenth Amendment. Id.* (citing *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*).

[HN3] The Delaware long-arm statute has been construed "broadly...to confer jurisdiction to the maximum extent possible under the due process clause." *La Nuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986)*. Nevertheless, the Court begins its analysis with the Delaware long-arm statute.

Pertinent portions of the Delaware long-arm statute provide:

(c) [HN4] As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court [*6] may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

\*\*\*

(1) Transacts any business or performs any character of work or service in the State;

*10 Del. C. §§ 3104(c)(1), (c)(3) & (c)(4)*. [HN5] Delaware state courts have interpreted the "transacting business" provision of *§ 3104(c)(1)* as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *See La Nuova, 513 A.2d at 768.*

[HN6] Once it is determined that there is personal jurisdiction under the state long-arm statute, the court must look to ensure that the granting of specific personal jurisdiction comports with the *Due Process Clause of the Fourteenth*

*Amendment. Broadcom, 167 F. Supp. 2d at 700*. The Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. *Id.* In particular, a "defendant's deliberate attempt to enter, advertise and promote itself" can be sufficient to confer specific personal jurisdiction over defendant. *United States Golf Asso. v. U.S. Amateur Golf Asso., 690 F. Supp. 317, 320 (D.N.J. 1988)* [*7] (holding that where a defendant has no connections to the state in question, a direct mail solicitation to the plaintiff was adequate to confer personal jurisdiction.) Even minimal marketing efforts have been held sufficient to confer personal jurisdiction. *See Clay v. Hopperton Nursery, Inc., 533 F. Supp. 476, 478 (D. Ky. 1982)* (holding that where a defendant advertised in a trade journal that had 152 subscribers in the state in question, and the plaintiff only vaguely recalled seeing the ad, the exercise of personal jurisdiction was nevertheless appropriate.)

[HN7] Once it has been decided that a defendant purposefully established minimum contacts within the forum State, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (U.S. 1985)* (internal citations omitted). The Third Circuit has held that cases are "rare . in which minimum requirements in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully [*8] engaged in forum activities." *Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 207 (3d Cir. 1998)* (internal citations omitted).

A. Personal Jurisdiction of Wallace

2004 U.S. Dist. LEXIS 21863, *8

Of note in this case, Wallace's horses took part in six races over a two and a half year period within Delaware. (D.I. 22, Ex. E.) As the trainer of record for these races, Wallace was prominently listed as the trainer of the horses in the U.S. Trotting Association Literature. (D.I. 22, Ex C-E.) For the privilege of training horses that competed in Delaware, Wallace had to, and did, obtain a racing license in Delaware. (D.I. 24, Ex. A at 1.) As Wallace is a seasoned horse trainer it is reasonable to assume that he was aware that his name would be listed and accessible by people watching races in Delaware. Consequently, it was foreseeable that people involved in the horse racing industry would watch the races in Delaware and contact Wallace, based, at least partially, on the performance of the horses he trained. In fact, from watching Wallace's trained horses excel at such races, Plaintiff decided to contact him and contract for his services. (D.I. 22, Ex A.) Wallace's efforts in Delaware can [*9] properly be viewed as a kind of marketing, and because Wallace's actions in Delaware led Plaintiff to contract with him and the alleged injury resulted from that contract, the necessary nexus is present under Delaware's long-arm statute *section 3104(c)(1)*.

Notions of fair play and substantial justice will not be offended by requiring Wallace to defend himself here. He has trained horses that have won a more than *de minimis* sum in Delaware (D.I. 22, Ex. E), and as the trainer of record his compensation is derived from the horses winnings in Delaware. Additionally, as earlier noted, Wallace was listed as the trainer of the horses that raced here and acquired name recognition among race enthusiasts, including Plaintiff. Consequently, Wallace can fairly be haled into court in Delaware. I therefore hold that this court has personal jurisdiction over Wallace.

**B.  Personal Jurisdiction of Dr. Malone**

With respect to Dr. Malone, at the time of the incident there were absolutely no contacts between him and Delaware. The Plaintiff argues that Dr. Malone's professional relationship with Plaintiff, maintenance of his website, and his professional obligation to obtain informed consent [*10] before castrating Mr. Commander constitute the minimum contacts necessary to support a finding of personal jurisdiction over Dr. Malone. (D.I. 11 at 8-9.) None of these acts are fairly seen as having occurred in Delaware or having arisen from acts occurring in Delaware, and as such, none of them can be used to establish personal jurisdiction. n1 *See La Nuova, 513 A.2d at 768.* Therefore, I hold that the court lacks personal jurisdiction over Malone.

> n1 The website is not alleged to be interactive or to otherwise be a vehicle for transacting business in Delaware. *See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454-55 (3d Cir. 2003)* (holding that the operator of a commercially interactive website, without specifically directing its selling towards the residents of the forum in question, is not subject to jurisdiction there.)

**C. Wallace's Service of Process**

Lastly, Wallace argues that he was not properly served under the Hague Convention and that the complaint against [*11] him should therefore be dismissed. (D.I. 19 at 12.) On October 21, 2003, a process server delivered the Summons, Complaint and Civil Coversheet to Wallace, who signed that he had received the documents. (D.I. 22, Ex. J.) This

2004 U.S. Dist. LEXIS 21863, *11

service is insufficient under the Hague Convention. n2 (D.I. 24 Ex. 1.) [HN8] *Federal Rule of Civil Procedure 4(m)*, however, does not contain a time limit for serving foreign defendants. Additionally, Wallace is aware of this litigation, as he has submitted briefs to this court opposing personal jurisdiction. Therefore, I find that Wallace is not unduly harmed by allowing Plaintiff additional time to properly effect service of process.

n2 The Hague Convention requires that all documents be forwarded to Canada's central process server. *See* HAGUE CONVENTION ON SERVICE ABROAD OF JUDICIAL AND EXTRA JUDICIAL DOCUMENTS IN CIVIL AND COMMERCIAL MATTERS,

LEXIS 20 U.S.T. 361, 16-18 (1969). In this case the documents were not delivered through the central process server, and, consequently, service was not effective.

[*12]

**IV. CONCLUSION**

Therefore, it is hereby ORDERED that Defendant Benjamin Wallace's Motion to Dismiss (D.I. 18) is DENIED, and Defendant Joseph Malone, D.V.M.'s Motion to Dismiss (D.I. 5) is GRANTED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

October 18, 2004
Wilmington, Delaware

# EXHIBIT
# H

LEXSEE 2004 U.S. DIST. LEXIS 19760



Analysis
As of: May 22, 2007

eSPEED, INC.; CANTOR FITZGERALD, L.P.; CFPH, L.L.C., and eSPEED
GOVERNMENT SECURITIES, INC., Plaintiffs, v. BROKERTEC USA, L.L.C.;
BROKERTEC GLOBAL, L.L.C.; GARBAN, LLC; ICAP PLC; OM AB; and OM
TECHNOLOGY (U.S.), INC., Defendants.

Civil Action No. 03-612-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 19760*

September 13, 2004, Decided

**PRIOR HISTORY:** *eSpeed, Inc. v. BrokerTec USA, L.L.C., 2004 U.S. Dist. LEXIS 20589 (D. Del., Sept. 9, 2004)*

**DISPOSITION:** [*1] Motion of defendant ICAP Plc to dismiss for lack of personal jurisdiction granted. Plaintiffs' contingent cross motion to compel discovery denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant, a corporation organized and existing under the laws of the United Kingdom with a principal place of business in New Jersey, moved to dismiss for lack of personal jurisdiction a patent infringement case brought against it and six other corporate defendants by plaintiffs, all corporate entities with principal places of business in New York. Plaintiffs moved to compel discovery.

**OVERVIEW:** Plaintiffs claimed that defendant was subject to specific jurisdiction, under *Del. Code Ann. tit. 10, § 3104(c)(1)*, based on its website activities and its subsidiaries' actions in Delaware, and to general jurisdiction under § 3104(c)(4), based on its continuous and systematic filings in Delaware relating to the formation, operation, and cancellation of its subsidiaries.

The court was unpersuaded that it was appropriate to exercise specific jurisdiction over defendant on the basis of its website activity alone. Plaintiffs had not shown that defendant purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites. The court was also unpersuaded that the actions of its subsidiaries could be attributed to defendant for the purpose of establishing specific jurisdiction. Filing amended certificates for certain subsidiaries did not constitute continuous or systematic contacts with Delaware. Finally, the exercise of jurisdiction over defendant, pursuant to *Fed. R. Civ. P. 4(k)(2)*, was not proper when defendant admitted that it was subject to jurisdiction in New Jersey.

**OUTCOME:** The court granted defendant's motion to dismiss; the court denied plaintiffs' contingent cross-motion to compel discovery as unwarranted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction*

2004 U.S. Dist. LEXIS 19760, *1

*& In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] Pursuant to *Fed. R. Civ. P. 12(b)(2)*, a court may dismiss a suit for lack of jurisdiction over the person. According to the U.S. Supreme Court, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant. This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN2] *Fed. R. Civ. P. 4(e)(1)* states that service of a summons may be effected pursuant to the law of the state in which the district court is located.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > General Overview*
[HN3] The Delaware long-arm statute, *Del. Code Ann. tit. 10, § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. Nevertheless, a court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Constitutional Law > Bill of Rights > Fundamental*

*Rights > Procedural Due Process > General Overview*
[HN4] According to the U.S. Court of Appeals for the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, is applicable. The Federal Circuit has instructed that, in interpreting the meaning of state long-arm statutes, courts defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process. The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN5] Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Insurance Law > Property Insurance > Coverage > Real Property > General Overview*
[HN6] The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in the State; (4) causes tortious injury in the State or outside of the State by an act or omission outside of the State if

2004 U.S. Dist. LEXIS 19760, *1

the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) has an interest in, uses or possesses real property in the State; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. *Del. Code Ann. tit. 10, § 3104(c)*. The provisions have been construed liberally so as to provide jurisdiction to the maximum extent possible in order to provide residents a means of redress against those not subject to personal service within the State.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Computer & Internet Law > Internet Business > General Overview*
[HN7] Where a nonresident defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website, it is proper to exercise specific jurisdiction over a defendant. Specific jurisdiction exists if the defendant purposefully availed itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.

*Civil Procedure > Jurisdiction > General Overview*
*Computer & Internet Law > Civil Actions > Jurisdiction > Constitutional Requirements*
*Computer & Internet Law > Internet Business > General Overview*
[HN8] It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN9] Under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent for jurisdictional purposes.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General*

*Overview*
[HN10] The alter ego theory is applicable only when the party asserting jurisdiction has established some fraud, injustice, or inequity in the use of the corporate form.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional Sources*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
[HN11] Personal jurisdiction pursuant to *Fed. R. Civ. P. 4(k)(2)* may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN12] A defendant who wants to preclude use of *Fed. R. Civ. P. 4(k)(2)* has only to name some other state in which the suit could proceed.

COUNSEL: Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, counsel for plaintiffs.

Of counsel: Gary A. Rosen, Esquire, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania; David J. Wolfsohn, Esquire, Alan C. Promer, Esquire, and Michele D. Hangley, Esquire, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania.

Richard L. Horwitz, Esquire and David E. Moore, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, counsel for defendants.

Of counsel: James W. Dabney, Esquire, Peter L. Simmons, Esquire, and Henry C. Lebowitz, Esquire, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York.

JUDGES: Kent   A.   Jordan,   UNITED   STATES

2004 U.S. Dist. LEXIS 19760, *1

DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**JORDAN, District Judge**

I. INTRODUCTION

This is a patent infringement case. Jurisdiction is proper under *28 U.S.C. § 1338*. The plaintiffs filed their Complaint on June 30, 2004, naming [*2] BrokerTec USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1.) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

II. BACKGROUND

A. The Parties

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, PP 2-4; *see also* D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (*Id., PP* 5-7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (*Id.,* P 8.)

B. Factual Background

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in [*3] jurisdictional discovery. (*See* D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal jurisdiction over ICAP in this District, *see Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d 434, 437 (3d Cir. 1987)*, the following is

taken largely from the plaintiffs' recitation of the facts (*see* D.I. 271 at 3-10), unless noted otherwise.

The plaintiffs allege that all of the defendants are willfully and intentionally infringing *U.S. Patent No. 6,560,580* B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (*See* D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) n1 ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (*Id.*) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (*Id.*) ICAP characterizes itself as a "holding [*4] company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

> n1 In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3-4.) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (*Id.* at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. n2 (*Id.* at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board"). (*Id.*) The Board approves the ICAP Group's budget and makes [*5] regular internal audit visits to the Group's operating companies in the United States. (*Id.* at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (*Id.* at 9.)

> n2 BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in

Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC, and Wrightson ICAP LLC. (*Id.* at 8 (citing D.I. 275, Ex. 30).)

ICAP, together with its BrokerTec n3 and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec.com. (*Id.* at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms n4 from anywhere in the world. (*Id.*)

n3 ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (*Id.* at 7.)

[*6]

n4 BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

III. STANDARD OF REVIEW

[HN1] Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987)*. This principle is traditionally described as a two-step analysis:

First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

[HN2] *Rule 4(e)(1) of the Federal Rules of Civil Procedure* [*7] states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." [HN3] The Delaware long-arm statute, *10 Del. C. § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. n5 *La Nuova D&B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986)*. I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*; see generally, *Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

n5 [HN4] According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)*. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998)*. The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

[*8]

As noted previously, [HN5] once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. n6 *Provident Nat'l Bank, 819 F.2d at 437; see also Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 422 (D. Del.*

*2001)* (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 (D. Del. Aug. 3, 1999).* General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *Id.*

N6 In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (*see supra* at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I. 272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests. The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully *infra* at n.7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I. 272) will be denied.

[*9]

[HN6] The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly

does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c).* The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents [*10] a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997).*

## IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long-arm statute. (D.I. 162 at 4-5.) The plaintiffs say that ICAP is subject to specific jurisdiction, under *10 Del C. § 3104(c)(1)*, on the basis of its website activities and its subsidiaries' actions in Delaware. (D.I. 271 at 11-16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under *10 Del. C. § 3104(c)(4)* because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n.2). (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its website activity alone. [HN7] "Where the defendant is clearly doing business through its website in the forum state, and where the claim relates to or arises out of use of the website," it is proper to exercise [*11] specific jurisdiction over a defendant. *See Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-54 (3d Cir. 2003)* (specific jurisdiction exists if "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."). In this case, the plaintiffs have come forward

2004 U.S. Dist. LEXIS 19760, *11

with evidence showing that ICAP's websites are accessible to computer users anywhere in the world. Mere accessibility of a website, though, is not a matter of much moment. [HN8] It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences. *Toys 'R' Us, 318 F.3d at 452* (exercise of personal jurisdiction proper where commercial website's interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).* There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's websites, downloaded the [*12] BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. n7 (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its website, they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's websites. Therefore, the plaintiffs have failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its websites to Delaware or knowingly interacting with residents of Delaware through its websites, *see Toys 'R' Us, 318 F.3d at 453,* and I decline to exercise personal jurisdiction over ICAP on the basis of its website alone.

n7 For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.,* while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I. 273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n.6, the plaintiffs' request to compel further discovery pertaining to Webtrends will be denied.

[*13]

I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, [HN9]

"under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4-5 (citing *C.R. Bard v. Guidant Corp., 997 F. Supp. 556, 558-59 (D. Del. 1998)).*) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. n8 Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

n8 To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, [HN10] that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 425 (D. Del. 2001)* (quoting *C.R Bard, 997 F. Supp. at 559*). The plaintiffs have not come forward with any evidence to establish those things in this case.

[*14]

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp., 1999 U.S. Dist. LEXIS 12455, 1999 WL 615175 at *2.* The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7-8.)

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no

2004 U.S. Dist. LEXIS 19760, *14

evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members [*15] of the Board occasionally travel to the United States on business; however, there is no evidence that they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to *Federal Rule of Civil Procedure 4(k)(2)*, on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) [HN11] Personal jurisdiction pursuant to *Rule 4(k)(2)* may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction [*16] over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 258 (3d Cir. 2000)*.

In this case, the plaintiffs' patent infringement claims arise under federal law. However, ICAP asserts that it

would properly be subject to jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under *Rule 4(k)(2). See ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001)* ([HN12] "A defendant who wants to preclude use of *Rule 4(k)(2)* has only to name some other state in which the suit could proceed.")

V. CONCLUSION

For these reasons, ICAP's Motion (D.I. 161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) will be denied. An appropriate order will follow.

**ORDER**

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 161) is GRANTED and [*17] the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I. 272) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

September 13, 2004
Wilmington, Delaware